# EDNA SMELTING AND REFINING COMPANY
# *v.* NATHAN MANUFACTURING COMPANY.

TRADEMARKS; WORDS INDICATIVE OF ORIGIN.

An opposition to the registration of the word "Monitor" as a trademark for steam boiler injectors and feeders, on the ground that the word has been for many years applied to such injectors which embody inventions upon which the patents have expired, and the word has become descriptive of a patented article, and is therefore not susceptible of exclusive appropriation as a trademark, is properly dismissed where it appears that the applicant for registration for a long period of time has applied the word to many forms of injectors manufactured by it, and has used the word to indicate origin, and not as descriptive of any particular type of injector.

No. 440 Patent Appeals. Submitted January 17, 1908. Decided March 3, 1908.

HEARING on an appeal from a decision of the Commissioner of Patents dismissing an opposition to the registration of a trademark.                                              *Affirmed.*

The facts are stated in the opinion.

*Mr. W. F. Murray* for the appellant

*Mr. Marcellus Bailey* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents, in a trademark case, dismissing the opposition filed by the Edna Smelting & Refining Company, and holding that the Nathan Manufacturing Company is entitled to register the word "Monitor" as a trademark for steam boiler injectors and feeders.

The grounds for the opposition are that the word "Monitor" for over twenty-one years has been applied to steam boiler injectors which embody inventions set forth in three patents, Nos. 234,157 and 234,158, dated November 9, 1880, and No. 276,319, dated April 24, 1883, granted to Emil Wohlers, and a patent No. 289,329, dated May 6, 1884, granted to Wotapek, all of which have expired; and that the word has become descriptive of a patented article, and not susceptible of exclusive appropriation as a trademark.

The facts briefly stated are these: Since 1881 the Nathan Manufacturing Company and its predecessor have been engaged in the manufacture, among other things, of injectors for locomotive and stationary engines. The injector first constructed by the Nathan Company was of the type embodied in the broad invention of Gresham as described in patent No. 57,057 granted Aug. 7, 1867, and which expired in 1879. This early type of injector also embodied the Wohlers patent, which is very narrow in scope, being limited to the particular manner of joining the auxiliary jet to the body of the injector. The Wohlers patent, therefore, is not fundamental, involving, as it does, a mere structural change in the Gresham construction. The Nathan Company designated its original output of injectors by the word "Monitor." From time to

time thereafter it constructed six other styles of injectors, none of which embody the Wohlers patent, and which it designated "Monitor 88;" "Monitor P. R. R. Standard;" "Monitor 88 P. R. R. Standard;" "Monitor '97;" "Monitor No. 5 C;" and "Monitor No. 8 D." The Examiner of Interferences dismissed the opposition of appellant in a carefully prepared opinion. The Commissioner sustained his decision, saying: "In the present case no patented improvements are found which are common to all the forms of injectors of the Nathan Manufacturing Company to which the word 'Monitor' was applied. It is therefore clear that this term was not used by the Nathan Manufacturing Company as descriptive of any particular type of injector. * * * In my opinion the testimony clearly warrants the conclusion that the word 'Monitor' was not used by the Nathan Manufacturing Company in such manner that it became descriptive either of a particular injector or of a type of injector. Its use was, on the contrary, merely such as would indicate the origin of the various injectors made by the Nathan Manufacturing Company, and was therefore a proper trademark use."

The Wotapek patent may be laid out of view, since the word "Monitor" was used by the Nathan Company as a trademark prior to its adoption of the features covered by the claims of that patent. *Batcheller* v. *Thomson,* 35 C. C. A. 532, 93 Fed. 660.

The Nathan Company, the record discloses, has built up a large business, and the word "Monitor" has become synonymous with the firm name. Hence to deny the firm the exclusive benefit of its trade reputation, it should plainly appear that a measurable monoply under an expired patent would be continued to the injury of the public. We have carefully examined the record, and concur in the views of the Commissioner. The predecessor of the Nathan Company, we are convinced, used the word "Monitor" as a trade name to designate the origin of its output, and without reference to the very narrow patent to Wohlers, which both tribunals of the Patent Office have found in no way dominated the first style of injector manufactured.

The case of *Singer Mfg. Co.* v. *June Mfg. Co.* 163 U. S. 169, 41 L. ed. 118, 16 Sup. Ct. Rep. 1002, cited by appellant, is not in point. In that case all the Singer sewing machines embodied certain fundamental patents controlled by the company, and caused them to be embraced under the generic term of "Singer." During the life of the patents none of the machines, as a whole, were open to public competition. In this case the Gresham patent had expired before the Nathan company manufactured its first injector, and the Commissioner found that "some of the forms of the Nathan company's 'Monitor' injectors are not shown to contain patented inventions, and none of the patents cover features common to all the forms."

Appellant introduced three technical works, by Kirkman, Roper, and Swingle, respectively, in support of its contention that the "Monitor" injector signified to the trade a patented article. Kirkman refers to the injector as the "Nathan Monitor Injector." Roper refers to the "Monitor Injector" as a "modification of Friedman's injector," and as containing "a few novel features." Swingle describes two of the seven different types of "Monitor" injectors manufactured by the Nathan company. Not one of these authors mentions the Wohlers patent in describing this locomotive injector, which, as we have seen, embodies that patent; and the subject-matter of the Wohlers patent is found in only one of the three illustrations accompanying the three descriptive articles.

Having in mind the narrowness of the Wohlers patent, that it was embodied in only one of the many injectors manufactured by appellee, and that there was a difference in the type and construction of those injectors, we conclude with the Commissioner that the word "Monitor" indicates origin and is not descriptive of any particular type of injector.

The decision of the Commissioner of Patents, therefore, is affirmed. The clerk of the court will certify this opinion and the proceedings in this court to the Commissioner of Patents, according to law.                    *Affirmed.*